UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JEFF WEIGEL,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY OF FLANDREAU; DUSTIN LAU; TY LAU; JOHN DOES NUMBER 1-10, all in their individual and official capacity; DUSTY'S CUSTOMS, a business,<br><br>Defendants. | 4:23-CV-04184-ECS<br><br>OPINION AND ORDER DISMISSING UNIDENTIFIED DEFENDANTS, GRANTING SUMMARY JUDGMENT IN FAVOR OF IDENTIFIED DEFENDANTS, GRANTING THE CITY OF FLANDREAU'S MOTION FOR JUDICIAL NOTICE, AND DENYING AS MOOT DUSTIN LAU AND DUSTY'S CUSTOMS' MOTION TO DISMISS |

Following a notice of public nuisance, City of Flandreau police officers—with assistance from several tow truck operators, including Dustin and Ty Lau—removed vehicles, trailers, and additional miscellaneous items from properties owned by Jeff Weigel's partnership Rudy's Welding or the Weigel family. Weigel attempted to prevent the removal and was ultimately tased and arrested. Proceeding pro se, Weigel now sues the City of Flandreau (the "City"), Ty Lau, Dustin Lau, Dustin's towing company Dusty's Customs, and John Does Number 1 – 10 (collectively "Defendants"). Doc. 1. The City moves for summary judgment, Doc. 50, and moves this Court to take judicial notice of state court documents and land ownership records, Doc. 53. Dustin and Dusty's Customs move for summary judgment, Doc. 68, and move to dismiss, Doc. 59. Ty answered Weigel's Complaint but has not moved to dismiss or moved for summary judgment. Doc. 12. Weigel has not sought leave to amend to identify John Does Number 1 – 10.

## I. Weigel's Claims Against Each Defendant

When assessing what claims are alleged in a pro se complaint, courts construe the pleading liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). Weigel's Complaint alleges claims under 42 U.S.C. § 1983 and state law. Doc. 1. First, the Court addresses the § 1983 claims. This Court liberally construes Weigel's Complaint to allege against all Defendants the following claims in relation to the nuisance and confiscation of his property: a Fourth Amendment illegal seizure claim, a Fifth Amendment taking without just compensation claim, and Fourteenth Amendment procedural due process claims. Id. ¶¶ 35–36. As to the arrest, this Court liberally construes Weigel's Complaint to allege against all Defendants Fourth Amendment claims for illegal seizure and excessive force. Id. ¶¶ 17, 35. As to the general treatment of Weigel, he asserts a First Amendment retaliation claim against all Defendants and a Fourteenth Amendment equal protection claim against all Defendants. Id. ¶¶ 35–36. Weigel also alleges a plethora of state-law claims. See generally id.

## II. Claims Against John Does Number 1 – 10

Weigel's Complaint named John Does Number 1 – 10 in their individual and official capacities as defendants. Id. at 1. Under Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." One court has noted that "[d]istrict courts in the Eighth Circuit routinely dismiss unknown defendants if the plaintiff has not identified them at the close of discovery." Chambers v. De La Cruz, No. 4:19-CV-3047, 2022 WL 18586947, at *8 (D. Neb. Dec. 15, 2022).

In the City's brief in support of its motion for summary judgment, it noted that the time to amend pleadings or add parties has passed and Weigel did not amend his Complaint to identify the John Doe Defendants, despite receiving initial disclosures and having the opportunity to

conduct discovery. Doc. 51 at 1 n.2. Not only has the time to amend pleadings passed, but the time to conduct discovery has also passed. Doc. 31 ¶ 4; Doc. 48. In Weigel's response to the City's motion for summary judgment, he did not address the City's comment about his failure to identify or seek leave to amend to add additional defendants. See Docs. 66, 75. Even after the City bringing this issue to Weigel's attention, he has still not filed a motion seeking leave to amend. Accordingly, this Court dismisses Weigel's claims against John Does Number 1 – 10 without prejudice.

### III.    The City's Motion for Summary Judgment

#### A.    Factual Background

Weigel filed "Plaintiff's Statement of Opposition to Defendants' Motion for Summary Judgment," which did not comply with D.S.D. Civ. LR. 56.1(B).[1] Doc. 66 (citation modified). Weigel was permitted to file a response complying with this Court's local rules. Doc. 67. Weigel filed a new response that somewhat responds to the paragraphs alleged in Defendant's statement of undisputed material facts, but he failed to include "appropriate citations to the record" to evidence a dispute of material fact. D.S.D. Civ. LR. 56.1(B); Doc. 75. Thus, as the City argues, this Court must deem the facts in its statement of undisputed material facts as admitted. Doc. 76 at 1–3. But this Court notes that Weigel filed a verified complaint. Doc. 1. "Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." Roberson v. Hayti Police

---

[1] Local Rule 56.1(B) states:
> A party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record. A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried.

Dep't, 241 F.3d 992, 995 (8th Cir. 2001) (citation omitted). "Although the court is not required to 'plumb through the record in order to find a genuine issue of material fact[,]' the court will consider any specific, nonconclusory facts alleged in [pro se plaintiff's] verified amended complaint." Shaver v. Mills, No. 4:23-CV-04204-KES, 2026 WL 221420, at *1 n.1 (D.S.D. Jan. 28, 2026) (quoting Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)). Accordingly, this Court considers the facts in Weigel's Verified Complaint when considering whether there is a genuine issue of material fact.

### 1.    Pre-Abatement

Jeff Weigel and Curtis Weigel[2] were owners of a partnership named Rudy's Welding.[3] Doc. 1 at 1; id. ¶¶ 3, 12. Rudy's Welding is the owner of a plot of land in Flandreau, South Dakota, consisting of Lots 4, 5, and 6, in Block 3 of Park Addition, which is identified as 208 East Park Avenue.[4] Doc. 52 ¶ 3. Rudy's Welding or the Weigel family is the owner of an adjacent plot of land in Flandreau, comprising of Lots 1, 2, and 3 of Block 3 of Park Addition,

---

[2] Weigel was involved in business with his now-deceased father, Curits Weigel. Doc. 1 ¶¶ 3, 12. For clarity, this Court will refer to Curtis Weigel as Curtis Weigel. This Court will refer to Plaintiff Jeff Weigel as Weigel.

[3] The Estate of Curtis Weigel and Rudy's Welding were initially named as plaintiffs in this lawsuit. Doc. 1 at 1. But the Estate and Rudy's Welding were ultimately dismissed as parties to this lawsuit because entities cannot proceed pro se. Doc. 4; Doc. 22 at 1; Doc. 39 at 3–4; Doc. 40.

[4] This Court noted in its order denying Weigel's motion for preliminary injunction that "Weigel, as a non-lawyer, is not entitled to represent Rudy's Welding. Because the Court dismissed Rudy's Welding as a party, Weigel currently lacks standing to contest any alleged harm caused to that property." Doc. 39 at 5 n.8. Because Weigel indicates that the property seized was "personal property . . . [that was] taken from plaintiff's possession," this Court reads Weigel's Complaint as alleging that Weigel personally owned some of the property, and thus, has standing to proceed with claims related to seizure of personal property on these properties. Doc. 1 ¶ 6. To the extent that Weigel's Complaint could be construed to seek any injunctive relief specific to the properties owned by Rudy's Welding (not to his seized personal property), he has not shown that this Court has standing over such claims. See Doc. 39 at 5 n.8 (holding that this Court does not have standing to provide injunctive relief preventing intervention with property ownership specific only to Rudy's Welding).

4

which is identified as 204 East Park Avenue.[5][6] Id. ¶ 2; Doc. 1 ¶¶ 15, 25. This Court collectively refers to 204 and 208 East Park Avenue as the Properties.

On October 22, 2001, a South Dakota Judicial System Third Judicial Circuit judge ordered Weigel to remove from 204 East Park Avenue

> all items of personal property and all vehicles that are used in connection with [Weigel's] commercial or industrial business, along with all other garbage, rubbage, solid waste, trash or refuse, junk, debris or salvage materials or abandoned, wrecked, dismantled or inoperative trailers, campers, boats and/or other motor vehicles stored on the property within a reasonable period of time.

Doc. 52 ¶ 4. The judge's order also prohibited Weigel from using "any portion of the City Right-of-Way, including the City's boulevard, for the storage of motor vehicles or other items." Id. ¶ 5. Despite the court order, the relevant property "had been kept in the same condition for many years." Id. ¶ 6 (quoting Doc. 1 ¶ 10).

In 2020, the City hired an independent contractor, Dave Miller, to inspect properties for compliance with its City ordinances. Id. ¶ 7. Miller sent approximately seventy-four letters to property owners providing notice of ordinance violations on their properties. Id. ¶ 9. Weigel received such letters dated June 20, 2020, which informed Weigel that the Properties contained nuisance violations, including "multiple abandoned vehicles, trailers, tractors, tires, and other debris." Id. ¶ 8. The June 2020 letters warned that failure to correct violations could result in a

---

[5] Weigel identifies in his Verified Complaint that "the adjacent property [was] owned by the Weigel family," not Rudy's Welding. Doc. 1 ¶¶ 15, 25. But in the City's statement of undisputed material facts, the City identifies Rudy's Welding as the record owner of 204 East Park Avenue. See Doc. 52 ¶ 2 ("Rudy's Welding is the record owner of 204 East Park Avenue, legally described as Lots 1, 2, and 3 in Block 3 of Park Addition to the City of Flandreau, Moody County, South Dakota. ('204 East Park Avenue') (sometimes referred to herein and in Exhibits as the 'residential property' and the 'vacant house' property).").

[6] The City identified Lots 1, 2, and 3 of Block 3 of Park Addition as having a mailing address of 204 East Park Avenue. Doc. 52 ¶ 2. Weigel claims the correct mailing address is 310 South Prairie Street, but Weigel did not include any citation to the record to dispute this fact. Doc. 75 at 3; D.S.D. Civ. LR 56.1(B). Even so, this Court does not find the dispute of the mailing address to be material because the nuisance letters and 2001 court order identified the land by its legal description or a general description, Docs. 52-1, 54-2, 55-8, and Weigel acknowledged receipt of the letters, Doc. 52 ¶¶ 10, 25.

5

fine and corrective action and informed Weigel that he could appeal the notice to the Flandreau City Council. Id.

On July 6, 2020, Weigel attended a Flandreau City Council meeting. Id. ¶ 10. At the meeting, he acknowledged receipt of the June 2020 letters and protested application of the nuisance ordinances to the Properties. Id. But the City Council advised Weigel to contact the City of Flandreau Code Enforcement Officer or follow the appeal procedure listed in the letters. Id.

Miller sent additional letters dated September 2, 2020, entitled "NOTICE AND ORDER," which again informed Weigel of the ordinance violations on the Properties. Id. ¶ 11. Miller sent approximately twelve such letters to property owners in Flandreau. Id. ¶ 12. The September 2, 2020 letters noted Weigel's failure to comply with the June 2020 letters or to timely and properly appeal but gave Weigel until September 18, 2020, to bring the Properties into compliance and reminded him of the ability to appeal the determination. Id. ¶ 11.

On September 8, 2020, Weigel attended a Flandreau City Council meeting and expressed his "wish[] to appeal" the nuisance determination. Id. ¶ 13. Weigel testified about his disagreement with the determination and the application of the ordinances to the Properties, and he stated multiple times, "nobody will remove any of the items from his property." Id. ¶¶ 13–14. The City Council tabled Weigel's appeal to review more information about his case, including the 2001 court order and other documents related to whether the nuisance ordinances applied to the Properties. Id. ¶ 15. The City Council requested that Weigel submit any document he would like to support the appeal. Id. The Flandreau City Attorney also sent Weigel a letter confirming the postponed consideration of his appeal and encouraged Weigel to submit documents in support of his appeal. Id. ¶ 16.

The City Council took Weigel's appeal off the table at its regular meeting on September 21, 2020. Id. ¶ 17. Weigel attended the meeting and continued his opposition to the application of the nuisance ordinances to the Properties. Id. ¶ 18. After discussion and providing Weigel an opportunity to submit additional arguments, the City Council voted. Id. ¶ 21. The City Council granted Weigel's appeal to a fenced-in area, but it denied Weigel's appeal in all other aspects, finding nuisance violations in the areas outside the fenced-in area and incorporating the requirements of the 2001 court order. Id. ¶¶ 20–21.

The City Attorney sent Weigel a letter dated September 24, 2020, summarizing the City Council's decision and noting a ten-day extension of time to resolve the nuisance issues. Id. ¶ 22. For 208 East Park Avenue, Weigel was required to remove property from the boulevard/City right-of-way and cut the tall grass and weeds. Id. ¶ 23. For 204 East Park Avenue, Weigel was required to remove "unlicensed and/or inoperable vehicles/trailers/campers; miscellaneous scrap, rack stands, tires, junk and debris on the front porch; and junk and debris stacked between garage and storage shed on west side." Id. ¶ 24.

During the October 5, 2020 City Council meeting, Weigel acknowledged that he received the September 24, 2020 letter. Id. ¶ 25. He was directed to contact City of Flandreau staff to discuss his timeline for compliance. Id. Weigel attended the October 19, 2020 City Council meeting, where he argued other businesses improperly use the right-of-way, but he did not seek relief related to the Properties. Id. ¶ 26. On November 2, 2020, the City Council decided to "abate any remaining items from the September 21, 2020 Council Decision on the Weigel/Rudy's Welding appeal(s) that are not in compliance with that decision as of November 6, 2020 at noon." Id. ¶ 27.

### 2.   Abatement

At approximately noon on November 6, 2020, Flandreau City police officers, including Police Chief Zach Weber and Officers Taylor White and Matt Joachims, arrived at the Properties to execute the abatement resolution. Id. ¶ 28. Chief Weber advised Weigel that the officers and tow truck companies hired by the City were there to abate the nuisance on the Properties. Id. ¶ 30. Throughout the encounter, Weigel told officers multiple times that they were not going to take his property. Id. ¶¶ 31–32. Weigel's behavior escalated to screaming and swearing at the officers. Id. ¶ 32.

At approximately 12:10 p.m., a tow truck arrived to remove a school bus from the Properties. Id. ¶ 33. As the tow truck began backing up to the bus, Weigel stated, "no, you're not towing that[.]" Id. ¶ 35. But he admitted that the bus protruded into the City's right-of-way. Id. ¶ 34. Weigel attempted to stand between the tow truck and the school bus to prevent the tow truck from connecting to it. Id. ¶ 36. Chief Weber cautioned Weigel that he would be arrested if he attempted to obstruct the abatement. Id. ¶ 38. Weigel protested and screamed at Chief Weber that the officers "weren't taking nothing." Id. ¶¶ 39–40. Chief Weber instructed Weigel to move and again warned Weigel that he would be placed under arrest if he continued to obstruct the abatement. Id. ¶ 41. "The [o]fficers repeatedly instructed Weigel that he needed to get out of the way or that he would be arrested, and Weigel repeatedly refused." Id. ¶ 44.

Chief Weber moved toward Weigel to arrest him, but Weigel pulled his wrists away and raised his arms above his head. Id. ¶¶ 45–46. Chief Weber grabbed Weigel's shirt. Id. ¶ 46. Officers cautioned Weigel to knock it off, and they informed him at least five times that he would be tased if he did not comply. Id. ¶¶ 46–47. Chief Weber attempted to apply the

handcuffs to Weigel's left wrist, but Weigel pulled away and "fought with his hands to avoid being handcuffed." Id. ¶¶ 48–49.

Officer Joachims brought Weigel to the ground, and officers instructed Weigel to roll onto his back and warned him that he would be tased if he failed to comply. Id. ¶ 50. Instead, "Weigel attempted to get off the ground and swung his left arm at Officer White." Id. Chief Weber again attempted to handcuff Weigel, but Weigel pulled his wrist under his body. Id. ¶ 51. After Weigel resisted, Officer White deployed his taser in drive stun mode to Weigel's left shoulder. Id. ¶ 52. The officers again instructed Weigel to roll on his stomach, but Officer White again applied his taser in drive stun mode after Weigel failed to comply. Id. ¶ 53. Weigel then rolled onto his stomach. Id. But Weigel did not comply with an officer's command for Weigel to give him his arm; instead, he waived his arm and shoved it under his body. Id. ¶ 54. Officer White again deployed his taser in drive stun mode. Id. ¶ 55. Weigel then complied, and officers handcuffed him. Id. ¶ 56.

After Weigel was placed in handcuffs, the officers assisted him to his feet. Id. ¶ 58. During the arrest Weigel's glasses and hat were knocked off, and at Weigel's request, the officers retrieved and put them back on his head. Id. Weigel complained of knee pain. Id. ¶ 60. Officer White asked Weigel multiple times if he needed an ambulance, but Weigel did not request one. Id. ¶ 59. The officers accommodated Weigel's knee pain by permitting him to ride in the front seat of the police car. Id. ¶ 60.

Weigel later admitted that he pushed the officers and asked one of the officers, "so you think I put up a pretty good fight, huh?" Id. ¶ 61. Weigel also admitted that he "resisted arrest so [he] got thrown to the ground . . . and got tased." Id. ¶ 62 (ellipsis in original). Weigel also

stated that he did not comply with the officers' orders to get out of the way and he did not "know if he assaulted an officer" but he did not "knowingly assault an officer." Id. ¶ 63.

Following the removal of Weigel's property, Weigel gave notice in writing to Defendants of his claim on April 1, 2021. Doc. 1 ¶ 9. Weigel identified the taken property, which included pickups and trucks, a passenger van, a bus, trailers (and a boat that was on one of the trailers), snowmobiles, and other miscellaneous items in or with the other items. Id. ¶¶ 3, 6–7, 30; Doc. 1-1. "[D]efendants refused and still refuses [sic] to return any property to [Weigel]." Doc. 1 ¶ 9. Dustin and Ty, or Dusty's Customs held the property after it was taken, demanded "excessive storage fees," and either sold or offered to sell Weigel's property. Id. ¶¶ 27–28. Weigel alleges that "Defendant is holding the property for the county under the unfounded claim of nuisance or for other claims against Plaintiff[]." Id. ¶ 8.

## B.    Motion for Judicial Notice

The City moves for this Court to take judicial notice of 2001 court documents from the South Dakota Unified Judicial System Third Circuit and documents showing land ownership. Doc. 53. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). But under Rule 201, a court may take judicial notice of "an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "Adjudicative facts are 'facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses." Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) (quoting Fed. R. Evid. 201 advisory committee's notes on

10

proposed rule). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

First, this Court grants the City's motion to take judicial notice of the 2001 state court records. The Eighth Circuit has held that Rule 201(b) allows courts "to take judicial notice of public documents for the purpose of noting undisputed adjudicative facts, but judicial notice is inappropriate to the extent [one party] offers these documents for the 'truth of the matters within them and inferences to be drawn from them—matters which [the opposing party] disputes.'" Insulate SB, Inc. v. Advanced Finishing Sys., 797 F.3d 538, 543 n.4 (8th Cir. 2015) (quoting Kushner v. Beverly Enters., 317 F.3d 820, 832 (8th Cir. 2003)). In Insulate SB, Inc., the Eighth Circuit determined that it was appropriate to take judicial notice of "the existence of and basic facts surrounding" other cases and documents that had been filed in public court records but declined "to consider the documents as evidence" that the party engaged in any wrongful conduct alleged therein. Id. Thus, this Court takes judicial notice of the state court records for the permitted purposes under Rule 201(b).

The City submitted an exhibit showing Rudy's Welding is the owner of Lots 1, 2, 3, 4, 5, and 6 in Block 3 of Park Addition. See Doc. 55-9. At the City's request, this Court previously took judicial notice of this exhibit because Weigel did not object and "courts may take judicial notice of public records." Doc. 39 at 5 n.8 (citing United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999)). Weigel again does not object to this Court taking judicial notice. See generally Docs. 66, 75. Accordingly, this Court takes judicial notice of the property records.[7]

_____

[7] This Court notes that Weigel's Complaint alleges that the "adjacent property [was] owned by the Weigel family." Doc. 1 ¶ 15. Thus, this Court takes judicial notice of the property record. But because the ownership of the adjacent property is in dispute, this Court does not infer the ownership of the adjacent property from the property record. See Bolin v. HSBC Mortg. Servs., No. 4:17CV1903 RLW, 2019 WL 918626, at *2 (E.D. Mo. Feb. 25, 2019) ("The Court can properly take judicial notice of the quit claim deed, including the date on which it was filed, because it is a public record. The Court, however, declines to take judicial notice of the other information as it is subject to reasonable dispute." (citation modified)).

11

C.    **Summary Judgment Standard**

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Main v. Ozark Health, Inc., 959 F.3d 319, 323 (8th Cir. 2020). If the movant meets its burden, the nonmoving party must establish the existence of a genuinely disputed material fact by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When ruling on a summary judgment motion, courts must view the facts and inferences fairly drawn from them in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). But courts do not "resort to speculation." Baker v. Silver Oak Senior Living Mgmt. Co., 581 F.3d 684, 687 (8th Cir. 2009) (quoting Roberts v. Park Nicollet Health Servs., 528 F.3d 1123, 1126 (8th Cir. 2008)). The judge's function during summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

12

inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### D.    Discussion

#### 1.    Section 1983 Claims Against a Municipality

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); see also id. at 691 (holding that local government entities are not liable for acts of its employees under the theory of respondeat superior). Section "1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train or supervise." Watkins v. City of St. Louis, 102 F.4th 947, 953 (8th Cir. 2024) (citation omitted). But "a Monell claim requires an underlying constitutional violation." Mitchell v. Kirchmeier, 28 F.4th 888, 902 (8th Cir. 2022); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual [employee], the fact that the departmental regulations might have *authorized* the use of [the conduct] is quite beside the point."); White v. Jackson, 865 F.3d 1064, 1075 (8th Cir. 2017) ("Municipal liability will not attach unless individual liability is found on an underlying substantive claim." (internal quotation omitted)). Accordingly, this Court considers whether Weigel suffered constitutional violations caused by a City policy, custom, or failure to train.

#### 2.    Fourteenth Amendment Due Process

Weigel alleges that Defendants "denied Plaintiff [his] rights to due process of law." Doc. 1 ¶ 35. This Court views Weigel's Complaint as alleging two separate due process claims: the

first claim is for illegal seizure of his property, and the second claim is for illegal retention of his property. Id. ¶¶ 6–10.

### a.    Pre-Deprivation Notice

Weigel alleges that the seizure of his property was wrongful because "there was not a proper hearing or ability to appeal the decision to call [the conditions] a nuisance." Id. ¶ 6. Liberally construing Weigel's Complaint, he has alleged a Fourteenth Amendment procedural due process claim against the City for deprivation of his property without sufficient notice.

To show a due process violation under the Fourteenth Amendment, Weigel must prove (1) the deprivation of a constitutionally protected liberty interest, and (2) the denial of adequate procedural protections. See Clark v. Kansas City Mo. Sch. Dist., 375 F.3d 698, 701 (8th Cir. 2004) (citation omitted). "In general, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time, and in a meaningful manner, prior to a governmental decision which deprives individuals of a liberty or property interest." Samuels v. Meriwether, 94 F.3d 1163, 1166 (8th Cir. 1996) (citing Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976)). With respect to a nuisance abatement, the Eighth Circuit has held that "where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs where the municipality abates the nuisance pursuant to the condemnation notice." Id. at 1166–67 (citing Hagen v. Traill County, 708 F.2d 347, 348 (8th Cir. 1983) (per curiam)).

Here, Weigel claims that "there was not a proper hearing or ability to appeal the decision to call [the conditions] a nuisance,"[8] Doc. 1 ¶ 6, but such conclusory statement is contradicted by

---

[8] Weigel's response to the City's motion for summary judgment appears to shed light on his due process claim, in that he discusses due process violations for events occurring in his state-court case. Doc. 75. If Weigel meant in his

14

the record. See Dimock v. City of Brooklyn Ctr., 124 F.4th 544, 548–49 (8th Cir. 2024) (A court does not adopt a fact that is "blatantly contradicted by the record, so that no reasonable jury could believe it." (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); see also Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion.")). In the body camera footage from the day of Weigel's arrest, Weigel expressly admitted to attending Flandreau City Council meetings related to the Properties and receiving notice about nuisance abatement on the Properties and the 2001 court order. Doc. 56-3 at 00:32–00:55, 7:57–10:12, 30:00–30:33.

Consistent with Weigel's statements in the video, the City argues that Weigel has been provided multiple notices and opportunities to address his concerns with the City Council. Doc. 51 at 6–7. A state court order entered in 2001 notified Weigel of his requirements to abate nuisances. Doc. 52 ¶ 4. The City also sent Weigel a notice of nuisance in June 2020 and a notice and order in September 2020, which Weigel acknowledged that he received. Id. ¶¶ 10, 13. Weigel's concerns and appeal of the nuisance decision were addressed at several council meetings. Id. ¶¶ 10, 13, 16–18, 25. The City Council ultimately granted Weigel's appeal in part and ordered Weigel to remove the rest of the nuisance property. Id. ¶¶ 20–21. On September 24, 2020, a letter summarizing the decision and providing Weigel ten days to bring the Properties into compliance was mailed to Weigel. Id. ¶ 22. During a City Council meeting on November 2, 2020, the City Council ultimately voted that the nuisance be abated if not resolved by November

---

Complaint that he was denied due process in the state-court case, this Court lacks jurisdiction to consider such claims under the Rooker-Feldman doctrine. See Richmond v. Weise, No. 4:23-CV-04168-RAL, 2024 WL 1834396, at *3–5 (D.S.D. Apr. 26, 2024) (discussing Rooker-Feldman requirements and limitations).

15

6, 2020. Id. ¶ 27. Thus, this case is akin to Samuels in that Weigel was given notice and opportunity to be heard about the nuisance matters before they were abated.

Weigel also claims that "[t]here were items on real estate property that was not part of the notice or was taken in the process when the property had nothing to do with the reasons in the claim or any zoning rules." Doc. 1 ¶ 6. He further says that "[t]he above-described personal property had not been taken or seized by virtue of a valid notice, being located on property that was not subject to the action."[9] Id. It is unclear what property Weigel is talking about and how the property allegedly was not part of the notice. Weigel's Complaint incorporates a list of property that he identified as having been taken. Doc. 1-1; Doc. 1 ¶ 3 (incorporating by reference Doc. 1-1). The list included vehicles (including pickups and trucks, a passenger van, and a bus), trailers (and a boat that was on one of the trailers), snowmobiles, and other miscellaneous items in or with the other items. Doc. 1-1. The notices provided to Weigel indicated that the nuisances at the non-business property included "[m]ultiple abandon [sic] vehicles, trailers, camper, snowmobile trailer with 2 snowmobiles, rack stands, tires, unknown junk on the front porch of the house. Junk and debris stacked between the garage and storage she [sic] west side of property." Doc. 54-1 at 1; Doc. 54-2 at 1. As for the business property, the notices addressed "[m]ultiple abandon [sic] vehicles (unable to count them all from the road),

---

[9] Weigel claims that some property was improperly seized because it was "located on property that was not subject to the action." Doc. 1 ¶ 6. But Weigel claims that the property included in Doc. 1-1 that was seized was "illegally seized and taken from plaintiff's possession by defendant on November 6, 2020, at Rudy's Welding and an adjacent property in Flandreau, South Dakota." Doc. 1 ¶ 6. Weigel has not identified any other property that was seized besides the items listed in Doc. 1-1. See generally id. It is undisputed that Rudy's Welding property was located at Lots 4, 5, and 6 of Block 3 of Park Addition to the City of Flandreau. Doc. 52 ¶ 3. It is also undisputed that Rudy's Welding or the Weigel family was the owner of an adjacent property, which is signified as a "residential property" or "vacant house" property and comprised Lots 1, 2, 3 in Block 3 of Park Addition to the City of Flandreau. Id. ¶ 2; Doc. 1 ¶¶ 15, 25. Notices were sent related to both properties, and Weigel acknowledged receipt of the letters at a City Council meeting. Doc. 52 ¶¶ 8, 10–11. Accordingly, besides Weigel's conclusory statement, there are no facts in the record showing that Weigel had property improperly seized because it was located on property not subject to the action.

tractors, camper, tires, car parts and other miscellaneous junk and debris. Tall grass and weeds growing up around the entire area." Doc. 54-1 at 3; Doc. 54-2 at 3. Thus, this Court has independently reviewed the record, and there is no evidence of items being taken for which Weigel was not provided notice. Because Weigel's statement in his Verified Complaint regarding property being taken without notice is contrary to the record, this Court need not accept Weigel's statement as true. Accordingly, the City is entitled to summary judgment on Weigel's Fourteenth Amendment due process claim.

Weigel's claim for due process for pre-deprivation notice is identical to his due process pre-deprivation notice claim against the other Defendants.[10] See Doc. 1. The Eighth Circuit has held that "[o]nce the district court determined no [constitutional] violation had occurred, it was proper for the district court to enter summary judgment for all defendants facing identical [constitutional] claims." Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 837 (8th Cir. 2015); see also Madewell v. Downs, 68 F.3d 1030, 1050 (8th Cir. 1995);[11] Chrysler Credit Corp. v. Cathey, 977 F.2d 447, 449 (8th Cir. 1992) (per curiam). Private parties can in some circumstances be held liable under § 1983 when the plaintiff suffered a violation of his constitutional rights. 42 U.S.C. § 1983 (requiring a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws"); Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004) (recognizing that private parties can be held liable under § 1983 in some circumstances). Thus, because this Court has found that Weigel was not

---

[10] Although the other Defendants are private citizens and a private company, a § 1983 claim against such parties requires a constitutional violation. Meier v. St. Louis, 934 F.3d 824, 829 (8th Cir. 2019) (citations omitted). Thus, because this Court has found no constitutional violation, the § 1983 claims fail as a matter of law against these Defendants, and the Court need not separately analyze whether they are state actors.

[11] This Court notes that Weigel was on notice that all Defendants alleged that they were entitled to judgment as a matter of law. Doc. 12 ¶ 1 (Ty's Answer indicating that "Plaintiff's Complaint fails to state a claim upon which relief may be granted."); Doc. 24 ¶ 50 (Dustin and Dusty's Customs' Answer indicating "[t]hat plaintiff fails to state a claim upon which relief may be granted.").

17

subject to a constitutional violation for the notice provided before the seizure of his property, all Defendants are entitled to summary judgment on this claim as well. Accordingly, this Court grants summary judgment in favor of all Defendants on Weigel's Fourteenth Amendment due process claim for pre-deprivation notice.

> **b.      Property Retention**

Weigel also claims that "Defendant has wrongfully detained the property since November 6, 2020 or wrongfully sold it." Doc. 1 ¶ 7; see also id. ¶¶ 9–10. "The alleged cause of detention of the . . . property by defendant according to plaintiff's best knowledge, information, and belief, is that the Defendant is holding the property for the county under the unfounded claim of nuisance or for other claims against Plaintiff[]." Id. ¶ 8. "Some courts have analyzed claims for retention of property that had been validly seized under the Fourteenth Amendment due process clause, not the Fourth Amendment." Hinton v. Jorgenson, No. 4:25-CV-04072-RAL, 2025 WL 1755444, at *4 (D.S.D. June 25, 2025) (citing Hopkins v. City of Bloomington, No. 12–1943 (JRT/JJG), 2013 WL 5406671, at *10 (D. Minn. Sept. 25, 2013); Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011)). The Eighth Circuit has in some circumstances recognized a separate due process claim for retention of property for refusal to return the property after the government no longer has the right to possess the property, for example refusal to return evidence that was initially lawfully seized as part of a criminal investigation even after the criminal charges have been dropped. See, e.g., Walters, 660 F.3d at 314 (identifying separate due process claims for the initial seizure of firearms for a criminal investigation and the city's refusal to return the property after the criminal charges were dropped).

Here, this Court finds that the initial seizure of Weigel's property was proper based on proper notice and was not illegally seized. See supra at 14–18; see infra at 20–21. Weigel does not identify any changes in circumstances which would distinguish the initial seizure from the continued deprivation, see generally Doc. 1, but even if he did, the City has argued that summary judgment is proper based on Weigel's failure to exhaust adequate post-deprivation remedies, including state tort claims and replevin. Doc. 51 at 7.

"Generally, a plaintiff is not required to exhaust state administrative remedies as a prerequisite to bringing an action pursuant to § 1983," but "[u]nder federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." Hopkins, 774 F.3d at 492 (citation modified). If a loss resulted from an established state procedure—in contrast with a random or unauthorized act by an employee—then an adequate post-deprivation remedy does not satisfy due process. Clark, 375 F.3d at 702 (citation omitted). "A postdeprivation remedy is adequate if it simply affords the right to present a claim and be heard," which "requires no more than the provision of a hearing before a body with authority to grant a remedy." Williams v. St. Louis County, 812 F.2d 1079, 1082 (8th Cir. 1987) (citation modified).

Here, as the Court noted, it did not find a violation of Weigel's due process rights based on pre-deprivation notice, and there are no facts in the record to signify any changes in circumstances that would have made the continued retention of property a separate due process violation. See generally Doc. 1. Even so, if Weigel has alleged such conditions, he has failed to show that the continued retention was based on an established procedure, nor has he alleged that he exhausted his state remedies. See generally id. Further, "South Dakota law allows replevin actions for immediate return of property and damages for taking or injuring property of another."

19

Reints v. City of Rapid City, No. 5:13-CV-05043-JLV, 2019 WL 8405351, at *10 (D.S.D. Nov. 20, 2019), adopted, 2020 WL 773468 (D.S.D. Feb. 18, 2020). In Reints, the court recognized that the plaintiff had failed to state a due process claim for deprivation of property by a city because the plaintiff "could have brought an action in state circuit court seeking the return of his property, the dissolution of the abatement assessments, and/or damages for the unlawful taking of his property." Id. Weigel similarly has not shown that he exhausted his adequate post-deprivation remedies, and the City is entitled to summary judgment on this claim. Because Weigel's due process retention claim is identical against the other Defendants, the other Defendants are entitled to summary judgment on this claim. Because this claim is dismissed for failure to exhaust his state remedies, this Court dismisses Weigel's procedural due process claim for retention of his property without prejudice. See Hackler v. City of Dyer, No. 2:17-CV-2124, 2018 WL 2347088, at *2–3 (W.D. Ark. May 23, 2018).

### 3.    Fourth Amendment Illegal Seizure of Property

Weigel claims that Defendants "wrongly took property." Doc. 1 ¶ 35. This Court liberally construes this allegation as a Fourth Amendment illegal seizure of property claim. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure of property under the Fourth Amendment occurs when there is some meaningful interference with an individual's possessory interests in that property." Burlison v. Springfield Pub. Schs., 708 F.3d 1034, 1039 (8th Cir. 2013) (citation modified). "[I]n determining whether a seizure violated the Fourth Amendment, the seizure must be examined for its overall reasonableness." Samuels, 94 F.3d at 1167 (citing Soldal v. Cook County, 506 U.S. 56, 71 (1992)).

20

The Eighth Circuit noted that generally "an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests." Id. at 1168. In Samuels, the plaintiffs owned an apartment building that was destroyed by a fire. Id. at 1165. The city provided notice of conditions in violation of city ordinances and sent a later letter notifying the plaintiffs of a hearing to consider condemnation of the property. Id. The plaintiffs attended the hearing, and at the hearing, the city adopted a resolution directing the plaintiffs to repair the building within a designated time, and the city mailed a copy of the resolution to the plaintiffs. Id. The plaintiffs did not comply with the resolution, and the city manager ordered the demolition of the property. Id. The Eighth Circuit held that the city "acted pursuant to a noticed hearing and a resolution effectuating municipal ordinances" and held that the Fourth Amendment was not violated. Id. at 1168.

This Court has already recognized that Weigel was provided sufficient procedural due process before the property was taken as part of the nuisance abatement. See supra at 14–18. Weigel was provided with multiple notices, and his concerns were heard at several city council meetings. There are no factors in the record that outweigh the governmental interests in compliance with city ordinances. Accordingly, the nuisance abatement and removal of property was reasonable and did not constitute a Fourth Amendment violation. Thus, Defendant is entitled to summary judgment on Weigel's Fourth Amendment illegal seizure of his property claim. Accordingly, the other Defendants are entitled to summary judgment on Weigel's identical Fourth Amendment claim.

### 4.    Fifth Amendment Takings

Weigel generally claims that Defendants "took property without compensation." Doc. 1 ¶ 35. This Court liberally construes Weigel's Complaint to allege a Fifth Amendment Takings

21

Clause claim. The Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V.

> [T]he government does not take a property interest when it merely asserts a "pre-existing limitation upon the land owner's title." For example, the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place.

Cedar Point Nursery v. Hassid, 594 U.S. 139, 160 (2021) (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1028–29 (1992)). Here, Weigel's property was taken pursuant to a city council abatement resolution. This Court already found that Weigel was given sufficient due process and opportunity to dispute the finding of a nuisance. Accordingly, Weigel's property was taken subject to a nuisance abatement, and he is not entitled to compensation. Thus, the City is granted summary judgment on Weigel's Fifth Amendment Takings Clause claim. The other Defendants are also entitled to summary judgment on the identical Fifth Amendment claim against them.

### 5.    Fourth Amendment Illegal Seizure During Arrest

Weigel's Complaint alleges that there was a "[w]rongful arrest."[12] Doc. 1 at 4 (citation modified). It is not expressly clear why Weigel believes his arrest was wrongful, see generally id., but this Court liberally construes Weigel's Complaint to allege a Fourth Amendment illegal seizure claim. Under the Fourth Amendment, "a warrantless arrest without probable cause violates an individual's constitutional rights." Ross v. City of Jackson, 897 F.3d 916, 920 (8th Cir. 2018) (quoting Joseph v. Allen, 712 F.3d 1222, 1226 (8th Cir. 2013)). "The existence of probable cause to support an arrest forecloses a wrongful arrest claim." Smith v. Rozeboom, 108

---

[12] It is not expressly clear whether the Complaint meant that the arrest of Weigel was wrongful or solely that "Curtis Weigel was wrongfully arrested or wrongfully detained." Doc. 1 at 4–5; id. ¶ 24. Because courts liberally construe pro se pleadings, this Court will liberally construe Weigel's Complaint to allege a Fourth Amendment illegal seizure claim as to his arrest.

22

F.4th 1064, 1070 (8th Cir. 2024). "Probable cause exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Joseph, 712 F.3d at 1226 (citation modified); see also Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022) ("Probable cause exists under the Fourth Amendment when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable causation to believe that the suspect has committed or is committing a crime." (internal citation and quotation omitted)).

The City argues that officers had probable cause to arrest Weigel under SDCL § 22-11-6. Doc. 51 at 10–14. SDCL § 22-11-6 states in relevant part, "any person who, by using or threatening to use violence, force, or physical interference or obstacle, intentionally obstructs, impairs, or hinders the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer . . . acting under color of authority" is guilty of a Class 1 misdemeanor. In State v. Dale, the South Dakota Supreme Court recognized the essential elements of SDCL § 22-11-6: "(1) the threatened use of violence, force or physical interference, or obstacle; (2) done intentionally; (3) which obstructs, impairs or hinders the enforcement of the criminal law or the preservation of the peace by law enforcement officers; and (4) acting under color of their official authority." 379 N.W.2d 811, 814 (S.D. 1985).

This Court first begins by determining whether Weigel engaged in activity that obstructed, impaired, or hindered law enforcement. City of Flandreau police officers were attempting to execute the Flandreau City Council abatement resolution, which the City argues was further supported by the 2001 state court order. Doc. 51 at 12. Weigel screamed at the officers and attempted to block the tow truck from hooking up to his property. Id. at 13; Doc. 52 ¶¶ 35–42. Weigel did not comply with officers' demands to move. Doc. 51 at 13; Doc. 52

23

¶¶ 38–42, 44–45. "SDCL 22-11-6 does not require that there be a technical or physical assault upon the officers, nor that violent or physical resistance be exerted." Dale, 379 N.W.2d at 815 (citing State v. Wiedeman, 321 N.W.2d 539 (S.D. 1982)). Merely "[r]efusing to comply with a police officer's orders can constitute obstruction." Ehlers v. City of Rapid City, 846 F.3d 1002, 1009 (8th Cir. 2017) (citing State v. Hodges, 631 N.W.2d 206, 211 (S.D. 2001)); Weideman, 321 N.W.2d at 541–42). "[F]ailure to obey a police instruction to move constitutes physical interference at the moment the person refuses to comply." Id. (citing Wiedeman, 321 N.W.2d at 542). Accordingly, Weigel was obstructing law enforcement. It is clear that Weigel acted intentionally to obstruct the nuisance abatement based on his repeated statements that Defendants were not going to take his property. Doc. 52 ¶¶ 34–37, 39–40, 42, 44.

This Court next turns to whether the officers were acting under color of authority in the enforcement of criminal laws or preservation of the peace. Under SDCL § 9-29-13, "[e]very municipality shall have power to declare what shall constitute a nuisance and prevent, abate, and remove the same." Further, "[a] public nuisance may be abated without civil action by any public body or officer as authorized by law." SDCL § 21-10-6. Here, the City was attempting to execute a Flandreau City Council nuisance abatement resolution. Doc. 52 ¶¶ 27–30. Although officers were not engaged in the enforcement of criminal laws, they were attempting to preserve the peace in executing the nuisance abatement. City of Marion v. Schoenwald, 631 N.W.2d 213, 218 (S.D. 2001). Accordingly, the law enforcement officers were acting under color of authority at the time of Weigel's arrest.

Thus, because it was objectively reasonable for officers to believe that Weigel was obstructing law enforcement acting under color of law to preserve the peace, there was probable cause for Weigel's arrest. Weigel has not shown that the seizure was unreasonable, nor has he

24

shown a constitutional violation. Accordingly, the City is entitled to summary judgment on Weigel's Fourth Amendment illegal seizure for his arrest claim. Because Weigel's claim is identical to his claim against the other Defendants, the other Defendants are also entitled to summary judgment on Weigel's Fourth Amendment illegal seizure for his arrest claim.[13]

### 6. Fourth Amendment Excessive Force

Weigel alleges that "Defendants violated Plaintiff's civil rights when they used excessive force." Doc. 1 ¶ 35. Specifically, Weigel alleges he "was forced down physically with excessive force, restrained, placed in handcuffs[,] shot with a Taser[,] and arrested," and as a result of the excessive force, he was "harmed." Id. ¶¶ 17, 23.

A seizure of an individual may become unreasonable when an officer uses excessive force. Watkins v. City of St. Louis, 102 F.4th 947, 951–52 (8th Cir. 2024) (citations omitted). "[T]he question whether force used was objectively reasonable or constitutionally excessive is a question of law, at the summary judgment stage and after trial." Westwater v. Church, 60 F.4th 1124, 1129 n.1. (8th Cir. 2023) (emphasis omitted). Courts "evaluate the reasonableness of the force by balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Baude v. Leyshock, 23 F.4th 1065, 1073 (8th Cir. 2022) (quoting White v. Jackson, 865 F.3d 1064, 1074 (8th Cir. 2017)). The reasonableness "depends on the particular facts and circumstances, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

---

[13] The City also argues that there was probable cause to arrest Weigel under SDCL § 22-11-1. Doc. 51 at 10–14. SDCL § 22-11-1 states, "[a]ny person who resists the execution or service of any legal process is guilty of a Class 2 misdemeanor." Under SDCL § 22-1-2(34), "process" means "any writ, warrant, summons, or order issued in the course of judicial proceedings." This Court need not decide whether the officers were executing a legal process as opposed to solely the City nuisance abatement resolution because there was sufficient probable cause under SDCL § 22-11-6.

25

flight.'" Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "[P]rior to using force officers must allow a reasonable opportunity to comply with their commands." McReynolds v. Schmidli, 4 F.4th 648, 653 (8th Cir. 2021); see also Kohorst v. Smith, 968 F.3d 871, 876 (8th Cir. 2020) ("We have upheld the use of force where a suspect is non-compliant and resists arrest or ignores commands from law enforcement."); Brown v. Haupert, No. 3:21-CV-03019-RAL, 2023 WL 2586057, at *7 (D.S.D. Mar. 21, 2023) ("[W]hen a person being arrested uses passive resistance, including refusal to follow orders, the police are justified in employing some force." (citing Kohorst, 968 F.3d at 876)).

Officers are "entitled to use the force necessary to effect the arrest" when the individual "at least appear[s] to be resisting." Ehlers, 846 F.3d at 1011. The officers in Ehlers arrested an individual for obstructing a police officer and resisting arrest under SDCL § 22-11-6. Id. at 1009. As a result of the arrest, Ehlers alleged two incidents of excessive force: (1) when an officer executed a spin takedown and forced the plaintiff to the ground and (2) when an officer shocked the plaintiff with a taser. Id. at 1010–11.

As to the spin takedown in Ehlers, the officer twice instructed the plaintiff to put his hands behind his back, but the plaintiff continued walking. Id. at 1011. The officer then "executed a spin takedown, taking hold of [the plaintiff's] neck and shoulder to bring him to the ground." Id. at 1007. The Eighth Circuit determined that a reasonable officer would interpret the plaintiff's behavior of continuing walking as noncompliant, and "[t]hus, [the plaintiff's] argument that no force was appropriate because he was being arrested for a nonviolent misdemeanor and was not resisting is inapplicable because he at least appeared to be resisting."

26

Id. at 1011. Thus, the Eighth Circuit determined that the takedown did not constitute excessive force in violation of the Fourth Amendment. Id.

The Eighth Circuit also determined that the tasing did not violate the Fourth Amendment. Id. When the plaintiff was forced to the ground, he landed on his back, and officers forced him onto his hands and knees and eventually forced him face down on the ground. Id. at 1007. The plaintiff was instructed to put his hands behind his back. Id. The plaintiff was warned that he would be tased if he did not comply. Id. The Eighth Circuit determined that the "officers at the scene reasonably could have interpreted [the plaintiff's] behavior of continuing to lay on his hands and refusing to comply with instructions as resistance and reasonably responded." Id. at 1011. Thus, the Eighth Circuit held that tasing in that instance did not violate the Fourth Amendment. Id.

Here, Weigel alleges that he "was forced down physically with excessive force, restrained, placed in handcuffs shot with a Taser and arrested." Doc. 1 ¶ 17. The City argues that Weigel was not subject to excessive force because he resisted arrest and failed to comply with officers' demands. Doc. 51 at 16–17. Although the crimes that the City mentions in relation to Weigel were misdemeanors that need not always involve violence, see SDCL §§ 22-11-1, -6, the record clearly indicates Weigel's refusal to comply with officers' commands and resistance to arrest. Weigel did not comply with officers' repeated instructions to move out of the way of the tow truck and warnings that failure to do so would result in his arrest. Doc. 52 ¶¶ 38–39, 41–42, 44–45. When officers attempted to execute the arrest, "Weigel fought with his hands to avoid being handcuffed." Id. ¶ 49. An officer brought Weigel to the ground to execute the arrest, but Weigel continued to not comply with officers' orders. Id. ¶ 50. Weigel attempted to get off the ground and swung at an officer and then pulled his hand under his body to avoid

27

being handcuffed. Id. ¶¶ 50–51. Thus, it is objectively reasonable, and an officer could reasonably determine that Weigel was resisting arrest akin to Ehlers. Therefore, he has not shown that he suffered a Fourth Amendment violation for excessive force when officers pushed him to the ground and attempted to handcuff him.

Weigel's Complaint could also be viewed as alleging excessive force when he was tased. Doc. 1 ¶ 17. The Court has looked at all three separate tasings, see Jackson v. Stair, 944 F.3d 704, 711–12 (8th Cir. 2019), and the Court finds, under the totality of the circumstances, each tasing was objectively reasonable. Weigel was warned at least five times before he was tased the first time. Doc. 52 ¶¶ 46–47, 50. Weigel pulled his wrist under his body as officers attempted to handcuff him and continued to not follow officers' instructions. Id. ¶¶ 50–51. At which point, an officer deployed his taser the first time in drive stun mode.[14] Id. ¶ 52. "Weigel was instructed to roll on his stomach, but he failed or refused to comply." Id. ¶ 53. At which point, an officer applied his taser in drive stun mode a second time to Weigel. Id. Weigel then complied and rolled on his stomach. Id. Weigel was instructed to give the officers his arm, but he waved his arm and shoved his wrist under his body. Id. ¶ 54. At which point, an officer applied his taser in drive stun mode to Weigel a third time. Id. ¶ 55. After the third tasing, Weigel complied, and officers handcuffed him. Id. ¶ 56. Accordingly, this Court finds each use of the taser to be objectively reasonable and not a violation of Weigel's Fourth Amendment rights.

Because Weigel's Fourth Amendment excessive force claims against the other Defendants are identical to his claims against the City, and this Court has found that Weigel was

---

[14] The Eighth Circuit has noted that "[d]eploying the taser in drive stun mode means that an officer removes the cartridge from the taser and applies the taser so as to make direct contact with the subject's body. When the taser is in drive stun mode, it only causes discomfort and does not incapacitate the subject." De Boise v. Taser Int'l, Inc., 760 F.3d 892, 895 n.5 (8th Cir. 2014).

not subject to excessive force in violation of his Fourth Amendment rights, this Court grants summary judgment to the other Defendants on Weigel's excessive force claim.

### 7.   First Amendment Retaliation

Weigel claims that "Defendants have retaliated against Plaintiff[] because Plaintiff[] asserted [his] rights under the zoning laws for the City and other laws." Doc. 1 ¶ 36. It is unclear if Weigel's Complaint is alleging that retaliation caused the property deprivation, the arrest, or both. Id. But for the sake of completeness, this Court will interpret it as both.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson County, 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)).

"To survive summary judgment, a plaintiff must show that a reasonable jury could find that a retaliatory motive of the government official was a 'but-for cause' of the adverse action, 'meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" Graham v. Barnette, 5 F.4th 872, 889 (8th Cir. 2021) (quoting Nieves v. Bartlett, 587 U.S. 391, 399 (2019)). "The causal connection is generally a jury question, but it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." Id. (quoting Revels, 382 F.3d at 876).

The City argues that Weigel cannot establish causation because there was an "obvious alternative explanation" for the abatement execution. Doc. 51 at 21. The City hired a code enforcement officer to inspect properties for violations of City ordinances. Doc. 52 ¶ 7. The

29

code enforcer mailed eighty-six letters in total (seventy-four letters and twelve notice and orders) to property owners within the City. Id. ¶ 9, 12. The City argues that "the 'obvious alternative explanation,' for the abatement and abatement execution is the condition of the Property, which was found to constitute a nuisance by both a South Dakota state court and City Council, and Weigel's failure or refusal to resolve the nuisances himself by timely cleaning up his properties." Doc. 51 at 21. Beyond Weigel's conclusory statement that the actions were taken in retaliation, there is no evidence in the record to indicate the motive was retaliatory. See generally Docs. 1, 52.

Further, although not argued by the City, this Court notes that it is not clear from the record when Weigel "asserted [his] rights under the zoning laws for the City and other laws." Doc. 1 ¶ 36. It is apparent that there was a prior zoning dispute that ended in 2001, but it is not clear if that is the First Amendment activity he believes caused the alleged retaliation nearly twenty years later. It is also unclear what—if any—First Amendment activity he engaged in between 2001 and the first 2020 nuisance notice or even after he received the first nuisance notice. See generally id. The City's statement of undisputed facts makes it clear that Weigel attended several City Council meetings to dispute the nuisance classification, but these facts are not alleged in Weigel's Complaint to state a claim for retaliation. Doc. 52 ¶¶ 10, 13–15, 18, 25–26.

Accordingly, this Court grants the City summary judgment on Weigel's First Amendment retaliation claim for the nuisance abatement. The other Defendants are entitled to summary judgment on Weigel's identical First Amendment retaliation claims against them for the nuisance abatement.

30

A First Amendment claim for a retaliatory arrest includes an additional requirement that "the defendant lacked actual or arguable probable cause to arrest" the plaintiff. Murphy v. Schmitt, 143 F.4th 914, 918 (8th Cir. 2025) (citing Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015)). But the Supreme Court has recognized a "narrow exception" to the element, in which "the existence of probable cause does not defeat a plaintiff's claim if he produces objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. (citation modified). Here, this Court already determined that Defendants had probable cause to arrest Weigel. See supra at 22–25. Weigel has not presented any evidence that he was arrested when similarly situated individuals not engaged in protected speech had not been. See generally Doc. 1. Thus, the City is entitled to summary judgment on Weigel's First Amendment retaliatory arrest claim. Because this claim is identical to Weigel's First Amendment retaliatory arrest claim against the other Defendants, this Court also grants summary judgment to all Defendants on Weigel's retaliatory arrest claim.

### 8.    Fourteenth Amendment Equal Protection

Weigel claims that Defendants have "applied the law to [him] in violation of the equal protection clause of the state and federal Constitutions." Doc. 1 ¶ 35. He further claims that "[t]he property adjacent to Rudy's Welding is being salvaged and taken down and Plaintiff[] ha[s] been sued and otherwise harassed by the City, which continues to apply its laws in violation of Due Process and the Equal Protection clauses of the U.S. Constitution." Id. ¶ 36. This Court liberally construes Weigel's Complaint as alleging an equal protection claim under the Fourteenth Amendment. See New Doe Child #1 v. United States, 901 F.3d 1015, 1027 (8th Cir. 2018) (recognizing that equal protection claims can arise under the Fifth and Fourteenth

Amendments, but equal protection violations under the Fifth Amendment apply to the federal government).

"The Equal Protection Clause requires that the government treat all similarly situated people alike." Barstad v. Murray County, 420 F.3d 880, 884 (8th Cir. 2005). "The first step in an equal protection case is determining whether the plaintiff has demonstrated that he was treated differently than comparators who were similarly situated to him. Plaintiffs and their comparators must be similarly situated in all relevant respects." Plaintiff A v. Park Hill Sch. Dist., 97 F.4th 586, 592 (8th Cir. 2024) (citation modified).

The City argues, "[d]ispositively, Weigel's Complaint fails to identify any similarly-situated person or class of people who was treated better than him." Doc. 51 at 23. In Weigel's Complaint, he makes two statements that could be considered comparisons for equal protection purposes: (1) "The City and others maintained property that was in a condition that was not really different," and (2) "Other businesses or residences are routinely allowed to maintain properties in similar condition but are not pursued for action by the City of Flandreau." Doc. 1 ¶¶ 6, 25. But Weigel does not explain how the properties are similar in all relevant aspects. Weigel has not provided any information explaining if the properties are similar in location or zoning, he does not acknowledge the distinction between property owned by the City compared to privately owned property, and he has not explained how the property was "in similar condition" and "was not really different" from the Properties. See generally id. Thus, this Court agrees with the City that Weigel has not identified anyone similarly situated.[15] Accordingly,

---

[15] Courts have recognized a class-of-one due process claim. Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam). But the class-of-one principle does not apply to "state action which by its nature involves discretionary decisionmaking based on a vast array of subjective, individualized assessments." Novotny v. Tripp County, 664 F.3d 1173, 1179 (8th Cir. 2011) (citation modified). "[W]here the rules themselves are uniformly applicable but state actors exercise discretion in determining enforcement, the class-of-one theory has no application." Reints, 2019 WL 8405351, at *14 (citing Novotny, 664 F.3d at 1179). The court in Reints held that "issuance of ordinance violation notices to [plaintiff] was based on ordinances that are uniformly applicable and the

32

Weigel has failed to show a violation of his right to equal protection, and the City is granted summary judgment on Weigel's equal protection claim. Because the equal protection claim against the other Defendants is identical, this Court grants summary judgment to all Defendants on Weigel's equal protection claim.

## IV.  State-Law Claims

The City asks this Court to find that some of Weigel's state-law claims are time-barred and asks this Court to decline to exercise supplemental jurisdiction over the remaining state-law claims against them. Doc. 51 at 25–27. Dustin and Dusty's Customs did not ask this Court to decline to exercise supplemental jurisdiction and instead argued the merits of Weigel's state-law claims against them. Doc. 69 at 16–22.

But a district court has discretion to "decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Ramlet v. E.F. Johnson Co., 464 F. Supp. 2d 854, 864 (D. Minn. 2006) ("Pursuant to 28 U.S.C. § 1367(c)(3), the Court may, *sua sponte*, decline to exercise supplemental jurisdiction over a pendent state-law claim if it has dismissed all claims over which it has original jurisdiction." (citing Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004)). When choosing to decline supplemental jurisdiction under § 1367(c)(3), "[d]istrict courts should consider such factors as 'the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims . . . .'" Aldridge v. City of St. Louis, 75 F.4th 895, 901 (8th Cir. 2023) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)). "In the usual

---

decision to issue a notice to [plaintiff] is based on a number of subjective factors within the purview of the city's officials' discretionary authority. Under such facts, the class-of-one theory does not apply." Id. Similarly, as the City notes, the decision to abate the nuisances on the Properties were done under statutory authority based on discretion of City officials. See Doc. 51 at 23–24.

33

case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (citation modified).

Here, this Court has dismissed all claims over which it had original jurisdiction against all Defendants. Weigel and Defendants have not cited to any authority to show why this Court should continue to exercise supplemental jurisdiction over Weigel's state-law claims. See Docs. 51, 69. This Court does not find that in this case the factors articulated in Aldridge support this Court continuing to exercise supplemental jurisdiction when all federal claims have been dismissed at summary judgment. Accordingly, this Court declines to exercise supplemental jurisdiction over Weigel's state-law claims, and Weigel's state-law claims are dismissed without prejudice.

## V.    Dustin and Dusty's Customs' Motions

Dustin and Dusty's Customs filed a separate motion for summary judgment. Doc. 68. In their brief in support of their motion for summary judgment, Dustin and Dusty's Customs notes:

> As explained at length in Flandreau's brief, there is no evidence in this case that Plaintiff was subject to a violation of his constitutional rights through the nuisance abatement, or the arrest of Plaintiff when he interfered with the police carrying out the nuisance abatement, or anything else that occurred in connection with the events referenced in Complaint. [Dustin and Dusty's Customs] concur with Flandreau on this point: as a threshold matter, there have been no constitutional violations to support any Section 1983 claims.

Doc. 69 at 10–11. Because this Court found no constitutional violations occurred, Dustin and Dusty's Customs' motion for summary judgment, Doc. 68, is granted.

Dustin and Dusty's Customs also moved to dismiss Weigel's claims against them due to Weigel's "failure to comply with this court's prior order compelling him to respond to discovery and to serve initial disclosures on or before July 18, 2025." Doc. 59 at 1; see also Doc. 60.

34

Because this Court granted Defendants' motion for summary judgment, this Court need not decide whether the requested discovery sanctions are appropriate or whether such sanctions would warrant dismissal of Weigel's Complaint. Accordingly, Defendants' Motion to Dismiss, Doc. 59, is denied as moot.

## VI.    Conclusion

Accordingly, it is

ORDERED that Weigel's claims against John Does Number 1 – 10 are dismissed without prejudice. It is further

ORDERED that the City's Motion for Judicial Notice, Doc. 53, is granted. It is further

ORDERED that the City of Flandreau's Motion for Summary Judgment, Doc. 50, is granted. It is further

ORDERED that Defendants Dustin Lau and Dusty's Customs Motion for Summary Judgment, Doc. 68, is granted. It is further

ORDERED that summary judgment enters in favor of City of Flandreau, Ty Lau, Dustin Lau, and Dusty's Customs on Weigel's Fourteenth Amendment due process claims for pre-deprivation notice and retention of property, Fourth Amendment illegal seizure of property claim, Fifth Amendment takings claim, Fourth Amendment illegal seizure for arrest claim, Fourth Amendment excessive force claim, First Amendment retaliation claim, and Fourteenth Amendment equal protection claim. Weigel's Fourteenth Amendment retention of property claim is dismissed without prejudice, and his other § 1983 claims are dismissed with prejudice. It is further

ORDERED that Defendants Dustin Lau and Dusty's Customs' Motion to Dismiss, Doc. 59, is denied as moot. It is finally

ORDERED that this Court declines to exercise supplemental jurisdiction over Weigel's state-law claims. Weigel's state-law claims are dismissed without prejudice.

DATED this 24th day of March, 2026.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

36